## Jennie Fannon, Administratrix, Appellee, v. Gus O. Morton, Appellant.

### Gen. No. 7,154.

1. HIGHWAYS AND STREETS—*duty to have automobile under control in crowded traffic condition.* It is the duty of the driver of an automobile operating it on a narrow street through traffic and past a circus parade around which children are playing and walking in the street to have his car under such control as to avoid striking a young child who darts out from between circus wagons and starts to cross the street near a regular street crossing.

2. HIGHWAYS AND STREETS—*sufficiency of evidence of negligence and excessive speed of automobile.* In an action for damages for the death of an eight-year-old boy who was struck by defendant's automobile as he was crossing a street near a regular crossing, a finding that the automobile was being driven negligently and at an excessive rate of speed at the time of the accident is sustained by evidence that the boy was following a circus parade with other children, that the parade and the children were seen by the driver as he approached them, that the street was narrow and filled with traffic at the place of the accident, that the automobile was not under control as it approached the place and that when he struck the boy the car went thirty-five to forty feet before it stopped, with the brakes set and the wheels locked and that a car moving at a lawful rate of speed would have slid but twelve feet under similar conditions.

3. HIGHWAYS AND STREETS—*excessive speed of automobile as proximate cause of accident.* In an action for damages for the death of an eight-year-old boy who was struck by defendant's automobile, the proximate cause of the accident is shown to have been the excessive speed of the automobile together with its careless operation where the evidence shows that it was driven into crowded traffic on a narrow street on which a circus parade followed by children was proceeding and that the driver was operating the automobile at such rate of speed that he could not stop in time to avoid striking the boy.

4. HIGHWAYS AND STREETS—*contributory negligence of eight-year-old child.* A jury's finding, in answer to a special interrogatory, that an eight-year-old boy was not guilty of contributory negligence is justified by evidence that just before the accident he had been following a circus parade on the opposite side of the street from his home and that he was struck by defendant's automobile as he was crossing to his home near his regular street

crossing, that he had been raised in the country and was not accustomed to being on city streets alone and was generally in the custody of his older sister, and that he exercised the degree of care that a child of his age, capacity and experience would have exercised under like circumstances in the same situation, even though it appears that he had left his sister's custody and unnecessarily crossed the street to follow the circus parade several blocks distant from the scene of the accident.

5. HIGHWAYS AND STREETS—*imputation of contributory negligence to custodian of child standing in loco parentis.* In an action for damages for the death of an eight-year-old boy who was struck by defendant's automobile, recovery by the administratrix on behalf of the next of kin is not barred by the alleged contributory negligence of the sister who was in charge of the boy in permitting him to cross the street to follow a circus parade, although he was customarily accompanied by the sister on the street, where her act in permitting him to leave her charge did not proximately contribute to the injury.

6. EVIDENCE—*admissibility of expert opinion evidence as to speed of automobile.* In an action for damages for death of an eight-year-old boy who was struck by defendant's automobile, it is not error to permit an expert to testify as to the probable speed of the automobile, based on the distance it slid on a rough pavement with the brakes set and the wheels locked after the moment of impact, where the evidence shows the distance as indicated by the tire marks and it is admitted that the wheels were locked.

7. INSTRUCTIONS—*charging as to allegations of declaration.* A general instruction in a negligence case telling the jury what is alleged in the declaration is not erroneous.

8. INSTRUCTIONS—*charging as to degree of proof.* A general instruction that if the plaintiff has proved her case by a preponderance of the evidence, however slight, she is entitled to recover, is good.

9. DEATH BY WRONGFUL ACT—*sufficiency of instructions.* An instruction in an action for damages for the death of plaintiff's intestate in an automobile collision which states all the elements essential to recovery by plaintiff is not erroneous for omitting reference to a defense which is fully covered by other instructions.

10. INSTRUCTIONS—*as to credibility of witnesses and weight of evidence.* A general instruction which correctly states all the elements to be taken into consideration in determining the weight of the evidence and which applies to all the witnesses and is so general in its terms that it is impossible to determine therefrom by which party it was offered, is not objectionable as specially applying to the driver of the automobile which struck plaintiff's intestate.

11. HIGHWAYS AND STREETS—*instruction as to care required of child in crossing city street.* An instruction which limits the care required of an eight-year-old boy in crossing a traffic-crowded city street to the time and just prior to the accident in which he was killed, is not erroneous, especially where instructions offered by the defendant contained similar limitations.

Appeal by defendant from the Circuit Court of Winnebago county; the Hon. ROBERT K. WELSH, Judge, presiding. Heard in this court at the October term, 1922. Affirmed. Opinion filed March 16, 1923. *Certiorari* denied by Supreme Court (making opinion final).

GARRETT, MAYNARD & HULL and LIVINGSTON & WHITMORE, for appellant; SIGMUND LIVINGSTON, of counsel.

HYER & GILL, for appellee.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Appellee, Jennie Fannon, as administratrix of the estate of Robert Chester Fannon, deceased, began suit in the circuit court of Winnebago county against the appellant, Gus O. Morton, to recover damages on account of the death of appellee's intestate by being struck by a truck driven by the son of the appellant. There was a trial by jury, verdict for appellee, but the judgment was reversed by this court upon appeal on account of erroneous instructions. 220 Ill. App. 663. Upon the second trial there was a verdict for appellee for $1,600, and to review the judgment entered upon the verdict this appeal was prosecuted.

Appellant insists that the verdict is not sustained by the evidence; that the evidence does not show that the appellant was guilty of the negligence charged in the declaration; and that the evidence does show that the deceased was not in the exercise of due care and caution for his own safety.

The declaration consisted of two counts. The first one was a charge of general negligence in the opera-

tion of the truck. The other count alleged that Harold F. Morton was in the employ of Gus O. Morton and was then and there driving, running, operating and controlling a certain truck; that while it passed through the residence portion of said city, it was carelessly, negligently, improperly and unlawfully run, driven and operated at a rate of speed that was greater than was reasonable and proper, having regard for the traffic and use of the way and so as to endanger the life and limb of persons lawfully using said way, that is, at a rate of speed in excess of fifteen miles per hour, contrary to the statute.

The accident occurred on September 10, 1918, about 4 o'clock in the afternoon, at the corner of North Main street and Fisher avenue, in the City of Rockford. At that point these two streets do not intersect, but Fisher avenue, which is an east and west street, enters Main street from the west. Main street is a north and south street and has a rough, brick pavement, and there are street crossings at Fisher avenue. On the afternoon in question, a circus parade, consisting of five or six wagons, was going north on the east side of Main street, about four or five feet west of the east curb of the street. Each wagon was drawn by two teams of horses. The space between the wagons was five or six feet. The deceased was a boy eight years and three months old. About two years prior to the accident, his parents had moved to Rockford and lived at 814 North Main street, which was the second house north of Fisher avenue on the west side of Main street. He had attended school in Rockford for about two years and was in the fourth grade. On the day in question he left school at 3:30 in the afternoon, in company with his sister, Opal, who was about two years his senior. They were going north on the west side of Main street and were three blocks south of Fisher avenue when they saw the circus parade. The deceased left his sister and crossed the street, and in

company with other children followed the wagons north on Main street. Some of these children were on the east sidewalk and some of them were in the street beside the wagons. Appellant's son, Harold Morton, was driving north on Main street in a Dodge truck, weighing twenty-six or twenty-seven hundred pounds. He had turned a slight curve in Main street about 800 feet south of Fisher avenue and from that point on north he could see the circus parade. When he came up behind the last wagon in the parade just south of Fisher avenue, he turned to the left to go around it. About this time the deceased had reached his crossing place on the east side of Main street opposite Fisher avenue and just a little south of his home. He ran through the parade between the wagons, was struck by appellant's truck and killed.

As to the negligence charged in the declaration, the evidence shows that when the driver of the truck rounded the curb in Main street 800 feet south of Fisher avenue, he not only saw the circus wagons but he also saw the children playing around them. He came up behind the last wagon and started around it on the west side. When he got opposite the last wagon, the boy dashed out from between the wagons about five feet ahead of the truck. The driver testified that he swerved to the left to avoid hitting the boy, but another truck driven by the witness Widholm was coming south and the driver of appellant's truck testified that he saw he was going to strike Widholm's truck and he swerved back to the right and struck the boy. He testified that when he first saw the boy, he applied the foot brake, then released it in order to swerve to the left, and after swerving back to the right he applied the emergency brake but could not stop before the boy was struck. It does not clearly appear just how much space there was between the west side of the circus wagon and the west curb of Main street, but it is apparent that this distance was not very

great for the reason that when the deceased was picked up, he was only a few feet east of the west curb. Other automobiles were going south in this space and the driver of this truck, when he drove into this space, should have had his car under control, so as to avoid striking another car or striking any person who might be crossing the street. He knew there was another street from the west coming into Main street and that people had a right to cross from one side of Main street to the other at this intersection. He also knew that children were following the parade and he should have been in the exercise of due care to avoid striking any of them.

There is considerable conflict in the evidence as to the rate of speed of appellant's truck. Its driver testified that he was going twelve to fourteen miles per hour and is corroborated by Widholm, who testified that his truck was going fifteen to sixteen miles per hour. F. J. Waterbury, who was on the west sidewalk of Main street almost opposite the scene of the accident, testified that the appellant's truck was going twenty to twenty-five miles per hour. After the accident, marks or tracks were found on the pavement starting from a point about three feet south of where a pool of blood was found, which indicates the place where the boy was struck. This pool of blood was estimated to be from four to six feet east of the west curb of Main street and from two feet south of the sidewalk line to a short distance north of the sidewalk line on the north side of Fisher avenue. These marks on the pavement were distinct, showing where the tires had slid or been dragged over the rough pavement, leaving small particles of rubber to mark the two parallel lines showing the tracks of the automobile. After the accident, these tracks were examined by Dr. Morris P. Rogers, who testified that the tracks started at a slight angle, but that they made practically straight lines from their beginning to the end. He

paced the distance and testified they were twelve to
fourteen paces long, or about thirty-five to forty-five
feet long. R. W. Mitchell, who was an expert engaged
in testing automobiles and their brakes, testified that
he was familiar with Dodge cars, that a Dodge car
with the emergency and foot brake set and the wheels
locked so the tires would drag on the kind of pave-
ment which was at this point must have been going
at twenty-five to thirty-five miles an hour, in order
to go a distance of thirty-five to forty feet. In his
judgment, the car would be going twenty-five miles an
hour, if the tires dragged thirty-five feet; and would
be going thirty-five miles an hour if the tires dragged
forty-five feet. He also testified that if an automobile
was going only twelve to fourteen miles an hour and
the brakes were set, the car would slide only about
twelve feet. There is some evidence tending to show
how a car would act under the circumstances here
shown upon a pavement that was wet or slippery. We
do not think it necessary to consider this evidence for
the reason that the great preponderance of the evi-
dence shows that this was a rough, brick pavement
and was dry and was not slippery. It is admitted that
the point of the accident was in a residential part of
the City of Rockford. From all this evidence, we can-
not say the jury were not justified in finding that at
the time of the accident and just prior thereto, appel-
lant's car was being driven at an excessive rate of
speed and that it was being carelessly and negligently
driven as charged in the declaration.

Appellant contends that the speed of the car was
not the proximate cause of the injury and appellant
is not liable, even if the car was being operated at an
excessive rate of speed. With this contention we can-
not agree. The speed of the car, together with its
careless operation, was the proximate cause of the in-
jury. If Morton, when he started through the space
between the circus wagon and the west curb of the

street, had done so at a moderate rate of speed and with due care in the operation of his car, this accident would not have occurred. We think the preponderance of the evidence shows that he was traveling at such a rate of speed and in such a manner that he could not stop, consequently he struck the deceased and, therefore, the charge of negligence is sustained.

The next question is whether the deceased was in the exercise of due care for his own safety. When an infant is under the age of seven years the presumption of law is, in certain cases, that he is not chargeable with the exercise of care, but when he is over seven years of age, and in possession of his normal faculties, he is chargeable with some degree of care. *Chicago City Ry. Co. v. Tuohy*, 196 Ill. 410; *Illinois Cent. Ry. Co. v. Jernigan*, 198 Ill. 297. In the case of adults, there is a fixed standard by which to measure the degree of care required, but in the case of a child there is no exact standard, and children are only required to exercise that degree of care which children of like age, capacity, intelligence and experience would naturally and ordinarily use in the same situation and under similar circumstances. *Illinois Iron & Metal Co. v. Weber*, 196 Ill. 526; *Burke v. Waterman*, 187 Ill. App. 440; *Hartnett v. Boston Store of Chicago*, 265 Ill. 331; *McGuire v. Guthmann Transfer Co.*, 234 Ill. 125. The question of the contributory negligence of a child is primarily a question of fact for the jury. *Names v. Chicago City Ry. Co.*, 180 Ill. App. 483; *Wende v. Chicago City Ry. Co.*, 192 Ill. App. 164; *Oglesby v. Metropolitan West Side El. Ry. Co.*, 219 Ill. App. 321. Where the facts are unchallenged and are such that reasonable minds could draw no other inference or conclusion from them than that the child was, or was not, at fault, then it is the province of the court to determine contributory negligence as a matter of law. *Chicago & E. I. Ry. Co. v. O'Connor*, 119 Ill. 586; *Hoehn v. Chicago, P. & St. L. Ry. Co.*, 152 Ill.

223; *Chicago & W. I. R. Co. v. Ptacek,* 171 Ill. 9. Negligence is not absolute, but is a thing which is always relative to the particular circumstances on which it is sought to be predicated. For this reason it is very rare that a set of circumstances is presented which enables a court to say, as a matter of law, that negligence, or contributory negligence, has been shown. *West Chicago St. Ry. Co. v. Liderman,* 187 Ill. 463.

The deceased was above the age of seven years and, therefore, he could be guilty of contributory negligence, but he was only chargeable with that degree of care which a child of his age, capacity and experience would naturally and ordinarily use in the same situation and under similar circumstances. He had been born and raised in the country, where he had gone to school for about a year and a half. He had only lived in the city for about two years and had gone to school during that time. The evidence shows that he had not been permitted to run the streets alone and generally went to and from school with his sister. These facts should be taken into consideration in determining the degree of care with which he was chargeable. The fact that he went across to the east side of the street two blocks south of the parade and followed the wagons along was not alone and of itself an act of negligence. If he had not crossed to the east side of the street, he would not have been injured, yet that fact did not alone constitute negligence, although it might have been one of the facts in a chain of facts which finally resulted in his death. Considerable stress is placed by appellant on the fact that no witness testified that deceased was in the exercise of due care and caution and that there were witnesses to the accident. Not a witness testified to what took place when he reached the crosswalk on the east side of the street and started across to the west side. No one testified to the amount of space between the wagons at that particular time and place, or as to any of the other

circumstances present on the east side of the street before he started to cross. The only witnesses who testified were those who saw the deceased just an instant before he was struck. The deceased was almost opposite his home. He had reached the point where he would naturally cross the street to go to his home. In crossing the street he was not impelled by an idle purpose to run out into the street to a place of danger, but his purpose was to go home. Proper caution in an adult might have required him to wait until the parade passed and then start across, but the deceased was not chargeable with that degree of care. The most that can be said on the question of negligence is that it was a question of fact for the jury and not a question of law for the court. On this point appellant submitted to the jury a special interrogatory, namely: "Was Robert Chester Fannon, deceased, at the time of the accident in question, and just prior thereto, using care and caution for his own safety?" This question was answered "Yes" by the jury. After considering all of the evidence, including the answer of the jury to the interrogatory, we cannot say that the jury were not justified in their finding upon the question of contributory negligence of the deceased. Several cases are cited in support of the contention that the evidence was not sufficient to justify the verdict and that the evidence shows the deceased was guilty of contributory negligence. Upon an examination, it will be found that the facts in each of these cases are not identical with those here presented. Whether or not a boy of this age was in the exercise of due care and caution depends upon the facts presented in the particular case, and other cases, with different facts, are not very helpful in determining this question.

It is next contended that Opal Fannon, the sister of the deceased and one of the beneficiaries in this suit, stood in the position of *loco parentis,* and was guilty of such contributory negligence as barred a recovery.

It has been held that where a suit is brought by the personal representative of an infant for his death, such suit is for the joint benefit of all the next of kin and, if any of the next of kin have been guilty of negligence in guarding him from death, which in, any manner contributed to the injury, such conduct is chargeable to all of the next of kin and bars a recovery. *Chicago City Ry. Co. v. Wilcox,* 138 Ill. 370; *City of Pekin v. McMahon,* 154 Ill. 141; *Edwards v. Negley,* 193 Ill. App. 426; *Carlin v. Chicago Rys. Co.,* 205 Ill. App. 303; *Deming v. Chicago City Ry. Co.,* 222 Ill. App. 641; *Ohnesorge v. Chicago City Ry. Co.,* 259 Ill. 424. The contention of the appellant is based upon the fact that the mother of the deceased testified that she never let him go to and from school alone, but he was always accompanied by his sister, and the argument is that, if the sister had not let him go across the street, he would not have been killed. No instruction was offered on this point and we are of the opinion that, if it had been seriously contended, instructions would have been offered concerning it. The only charge that can be made against the sister is that she permitted him to cross the street two blocks south of the accident and go along the sidewalk to the crossing at Fisher avenue. If the deceased had never crossed the street, he would not have been killed, but merely permitting him to cross the street cannot be considered alone and of itself such an act of negligence on the part of the one standing in the relation of *loco parentis* as bars a recovery. If the deceased, at the time and just prior to the accident, as was found by the jury, was in the exercise of due care and caution for his own safety, then this so-called act of negligence in permitting him to cross the street had nothing to do with his death. It may have been one of the elements in the chain of circumstances which led to his death, but it was not the proximate cause of the injury and did not bar a recovery by the next of kin.

Appellant objects to the testimony of the expert witness, R. W. Mitchell, as to how fast the car was going in order to drag its tires on the pavement a distance of thirty-five to forty feet with the brakes set. The objection is that the hypothetical question put to the witness was not based upon the evidence for the reason that Harold Morton did not testify that the wheels of his car were locked at the time the tire marks were made on the pavement. It is not necessary to point out the particular evidence on this question, but it is sufficient to say that on cross-examination Morton admitted that his wheels were locked at the time in question. Several other objections are made to this evidence, but we think all of the questions asked were based upon the evidence and were proper. If the appellant desired to insert elements omitted from the questions of appellee, he had a right to do so, but his failure to do so cannot be made a basis of reversal.

Complaint is made of the first, second, third, sixth, seventh and eighth instructions given on behalf of appellee. The first instruction tells the jury of the particular charge in the two counts of the declaration. It does not attempt to state appellant's defense, nor to define the issues in the case. It has been held to be erroneous to refer in an instruction to the declaration and tell the jury that if the plaintiff has proved his case by a preponderance of the evidence, as alleged in the declaration, he is entitled to recover. *Krieger v. Aurora, E. & C. R. Co.*, 242 Ill. 544; *McFarlane v. Chicago City Ry. Co.*, 288 Ill. 476; *Laughlin v. Hopkinson*, 292 Ill. 80. This first instruction tells what the declaration alleged and has been held proper. *Bernier v. Illinois Cent. R. Co.*, 296 Ill. 464. The instruction is not mandatory, does not direct a verdict, and is not subject to the objection against it. The second instruction tells the jury that if appellee has proved her case by a preponderance of the evidence, even though the evidence preponderates but slightly in her favor,

that she is entitled to recover. This instruction has been held good in *Dowd v. Chicago City Ry. Co.,* 153 Ill. App. 85; *Taylor v. Felsing,* 164 Ill. 331; *Chicago City Ry. Co. v. Fennimore,* 199 Ill. 9. Taken in connection with the first instruction, it could not have misled the jury. The third instruction told the jury that if they find from the evidence that Harold Morton, at the time and just prior to the injury, was operating the truck at a rate of speed which was greater than was reasonable and proper, having regard to the traffic and use of the way, or so as to endanger the life and limb or injure the property of any person, and that in so doing he was guilty of negligence, and as a direct result thereof the deceased was killed, their verdict should be for the appellee, provided they believe from the evidence that, at the time and immediately prior thereto, deceased was in the exercise of that degree of care and caution required of him, as set forth in these instructions. The objection is that this instruction omitted any reference to the negligence of Opal Fannon and omits the appellant's defense. The court instructs the jury as to all of the defenses of appellant in other instructions. This instruction contains all of the elements necessary to direct a verdict. If the appellee proved the facts as set forth in this instruction, she would be entitled to a verdict. The sixth instruction was as to the elements to be taken into consideration in determining the weight which the jury were to give to the evidence of the various witnesses and includes the motive or lack of motive, the relationship or lack of relationship, interest or lack of interest, manner of testifying, intelligence, reasonableness, etc. It is insisted that this instruction applied only to Harold Morton and for that reason was erroneous, as was held in *Roberts v. Chicago City Ry. Co.,* 262 Ill. 228, and *Carlin v. Chicago Rys. Co.,* 205 Ill. App. 303. This is a general instruction. It applies to all of the witnesses in the case. It has no

specific application to Harold Morton any more than it has to any other witness. It is impossible from the instruction to tell by which side it was offered. It correctly told the jury what elements were to be taken into consideration in determining the weight of the evidence. Witnesses on both sides had an interest in the result of the suit, witnesses on both sides were related to the parties, and for these reasons the instruction did not come within the authority cited where the instructions were held bad principally upon the ground that there was no evidence upon which to base them. The seventh instruction told the jury that the care and caution required of deceased immediately prior to and at the time of the accident was that which might ordinarily and reasonably be expected under the same, or similar, circumstances of a boy of his age, experience, intelligence and capacity, to comprehend and avoid danger as the same is discovered in the evidence. This instruction is quite similar to the third instruction given on behalf of the appellant. The degree of care, as laid down, is in accordance with *Burke v. Waterman*, 187 Ill. App. 440; *Chicago City Ry. Co. v. Tuohy*, 196 Ill. 410; *Hartnett v. Boston Store of Chicago*, 265 Ill. 331; *McGuire v. Guthmann Transfer Co.*, 234 Ill. 125. Objection is made to that part which limits the care to the time and just prior to the accident. This is correct and was so held in *Hall v. Chicago & A. R. Co.*, 208 Ill. App. 102; *Peterson v. Chicago Consol. Traction Co.*, 231 Ill. 324; *Knox v. American Rolling Mills Corporation*, 236 Ill. 437. As far as the time alleged in the instruction is concerned, it is in accord with the language in appellant's third and fifth instructions. If the seventh instruction is erroneous, the third and fifth of appellant's are also erroneous. The eighth instruction was, in substance, the provision of the statute relative to the rate of speed of automobiles upon the highways in this State. The complaint is that it is an abstract proposition of law and should

not have been given.   There is evidence on which to base this instruction.   It was applicable to the facts and no error was committed in giving it.   *Donk Bros. Coal & Coke Co. v. Peton,* 192 Ill. 41; *Ward v. Meredith,* 220 Ill. 66; *Greene v. Fish Furniture Co.,* 272 Ill. 148.

Complaint is made of the third, fourth, fifth, seventh and ninth instructions refused on behalf of the appellant.   It will not be necessary to take up each one of these instructions and consider it in detail.   It is sufficient to say that some of them were covered by other instructions given, and that some of them are not technically accurate.   We have examined them and the instructions given on both sides and are of the opinion that the jury were accurately instructed as to all features of the case necessary for their consideration and there was no error in any instruction given or refused.

We find no reversible error and the judgment will be affirmed.

*Judgment affirmed.*